UNITED STATES DISTRICT COURT
─────── District of ───────
MASSACHUSETTS

| | |
|---|---|
| MASON HEYDT, *as owner of the* M/V MASONS CANDY, and *as nominee on behalf of* NATIONAL SAVE THE SEA TURTLE FOUNDATION, INC.; and, YACHTINSURE, LTD, : : : : : | Civil Action No.: _____ **In Admiralty** |
| Plaintiffs v. TBT MOORINGS, INC., d/b/a Nantucket Moorings, Defendant : : : : | |

## ORIGINAL COMPLAINT

Plaintiff, Mason Heydt ("Mr. Heydt"), as owner of the M/V Masons Candy and as nominee on behalf of National Save the Sea Turtle Foundation, Inc., ("Sea Turtle Foundation"), and Yachtinsure, Ltd., ("Yachtinsure"), by way of <u>verified</u> complaint, allege as follows:

**Nature of Action**

This is an action to enforce plaintiffs' rights and remedies as against defendant TBT Moorings, Inc., d/b/a Nantucket Moorings, ("TBT"), for TBT's negligent design, construction, installation, maintenance and inspection of its failed mooring system that set adrift the M/V Mason's Candy leeward, alliding with and dragging other boats, before grinding onto the shoreline, causing substantial hull and mechanical damage to the M/V Masons Candy, and salvage costs and losses in excess of $400,000.

## Jurisdiction and Venue

1.  This court has original subject matter jurisdiction over the parties, and the admiralty and maritime claims herein, pursuant to 28 U.S.C. §§ 1331, 1332, and 1333(1), and pursuant to Article III, Section 2 of the United States Constitution and Rule 9(h) of the Federal Rules of Civil Procedure. This court has supplemental jurisdiction over any pendant state law claims pursuant to 28 U.S.C. § 1367.

2.  Venue is proper before this court pursuant to 28 U.S.C. § 1391(b) because the defendant resides, and a substantial part of the events or omissions giving rise to the claims occurred, within the judicial District of Massachusetts.

## Parties

3.  Plaintiff, Mr. Heydt, is a United States citizen and a resident of the State of Florida. Mr. Heydt is the owner of the M/V Masons Candy, a 67 foot Burger Motor Yacht bearing hull no. BRGJ319C1274 ("Vessel").

4.  Plaintiff, Sea Turtle Foundation, is a duly organized and registered United States non-profit business entity having a principal place of business at 4419 W. Tradewinds Avenue, 2d Floor, Fort Lauderdale, Florida 33308. Sea Turtle Foundation is a predecessor-in-interest in Vessel ownership under United States Internal Revenue Code regulations governing charitable business organizations.

5.  Plaintiff, Yachtinsure, is a duly organized foreign business entity registered in the United Kingdom having a principal place of business at 33 Creech Lane, London EC3A 5EB. Yachtinsure is an insurer of yachts worldwide, and at all relevant times the Vessel's insurer against losses of the kind the subject of this action.

6.     Defendant, TBT, d/b/a Nantucket Moorings, is a duly organized Massachusetts for-profit corporation having a principal place of business at 85 Bartlett Road, Nantucket, Massachusetts 02554.

## The Relevant Facts

7.     At all relevant times, TBT was engaged in the business of providing mooring sales, rentals and services, and mooring systems construction, designed and offered for sale and lease for the intended purpose to secure vessels on the navigable waters of Nantucket Harbor.

8.     On or about April 4, 2016, TBT and Mr. Heydt entered into a contract providing for TBT to lease to Mr. Heydt one (1) 2000 lb. mooring in Nantucket Harbor to secure the Vessel ("Contract").  (Exhibit A).

9.     At the time of Contract, TBT knew, or had reason to know, the purpose for which Mr. Heydt rented the mooring and that Mr. Heydt was relying on TBT to furnish a mooring system suitable and fit for that purpose. TBT's knowledge, or reason to know, arose out of TBT's expertise in the mooring business, familiarity with Nantucket Harbor and awareness of the Vessel and its mooring requirements. Specifically, Mr. Heydt had rented from TBT the prior 2015 summer season a 2000 lb. mooring for the Vessel.

10.    At all relevant times, TBT warranted to Mr. Heydt that all workmanship, materials and services performed by TBT in the design, construction, maintenance and inspection of its moorings would be performed with the skill, proficiency and expertise commensurate with that normally exercised by the marine industry for comparable harbors, moorings and yachts.

11.     In spring 2016, upon the Vessel's arrival to Nantucket Harbor, TBT provided to Mr. Heydt a 2000 lb. mooring near the Nantucket Harbor entrance ("First Mooring") to secure the Vessel, to which Mr. Heydt secured the Vessel without incident.

12.     Afterward, in late summer 2016, TBT and Mr. Heydt agreed to relocate the Vessel from the First Mooring location to a different 2000 lb. mooring bearing mooring no. I-2 ("I-2 Mooring") located closer to shore and harbor facilities.

13.     Mr. Heydt relocated the Vessel to the agreed TBT I-2 Mooring. (Exhibit B).

14.     On Arriving at the I-2 Mooring, Mr. Heydt immediately telephoned the owner and president of TBT, Mr. Tim Reinemo, ("Mr. Reinemo"), and reminded Mr. Reinemo that he rented a 2000 lb. mooring, that the Vessel required a 2000 lb. mooring, and that the I-2 Mooring buoy was labeled a 1000 lb. mooring, to which Mr. Reinemo replied *"don't worry, I [Mr. Reinemo] set the mushroom myself and it's 2000 lbs."* (Exhibit C, Heydt Aff. at ¶ 5).

15.     At all relevant times, a 2000 lb. mooring system was an essential element of the TBT-Heydt rental agreement.

16.     Mr. Heydt reasonably, and justifiably, relied on Mr. Reinemo's representation to Mr. Heydt that the I-2 Mooring was a 2000 lb. mooring.

17.     On information and belief, and discovery will show, the I-2 Mooring was not a 2000 lb. mooring system, but rather a mooring assembly of mismatched parts comprising a 2000 lb. mooring mushroom with a 1000 lb. chain, pennant and hardware. (Exhibit C, Heydt Aff. at ¶ 8).

18.     At all relevant times, TBT knew, or should have known, the I-2 Mooring was not a 2000 lb. mooring system.

19.     At all relevant times, TBT had exclusive possession of the Vessel.

20.     Overnight on October 9, 2016, the I-2 Mooring pennant failed, setting the Vessel adrift leeward, alliding with other boats and moorings, before grinding onto the shoreline, resulting in substantial damages to the Vessel. (Exhibit D, (failed pennant line and I-2 Mooring buoy)).

21.     At sunrise on October 10, 2016, the I-2 Mooring buoy bobbed *sans* pennant in the harbor, the pennant bitt-end still cleated to the M/V Masons Candy's bow hitch now ashore in beach grass.

## Count I
### Gross Negligence

22.     Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

23.     TBT owed Mr. Heydt a duty of care to provide to Mr. Heydt a 2000 lb. mooring system of the type, kind and strength commensurate with marine industry standards to secure the Vessel.

24.     TBT breached its duty of care to Mr. Heydt by failing to provide a 2000 lb. mooring system of the type, kind and strength commensurate with marine industry standards to secure the Vessel.

25.     Specifically, TBT was negligent in the design, construction, installation and inspection of the I-2 Mooring in the following particulars: the I-2 Mooring was comprised of a 2000 lb. mushroom base having 1000 lb. chain, pennant and hardware.

26.     TBT's wanton and reckless absence of even slight diligence to inspect the I-2 Mooring after Mr. Heydt's notice to TBT of a purported "mislabeled" mooring buoy is conduct constituting gross negligence.

27. As a direct, proximate and foreseeable result of TBT's gross negligence, the I-2 Mooring pennant failed, causing substantial damage to the Vessel, and causing Plaintiffs substantial pecuniary and non-pecuniary losses.

## **Count II**
### **Negligence**

28. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

29. TBT owed Mr. Heydt a duty of care to provide to Mr. Heydt a 2000 lb. mooring system of the type, kind and strength commensurate with the marine industry standards to secure the Vessel.

30. TBT breached its duty of care by its negligent design, construction, installation and inspection of the I-2 Mooring.

31. On information and belief, TBT constructed the I-2 Mooring by setting a 2000 lb. mushroom attached with 1000 lb. ground tackle.

32. TBT's I-2 Mooring was not a 2000 lb. mooring system, but a mismatch of parts of less than a 2000 lb. mooring system.

33. TBT was negligent in its construction of its I-2 Mooring.

34. TBT's failure to inspect the I-2 Mooring constitutes negligence.

35. TBT's failure to repair, or otherwise ensure, the I-2 Mooring was a 2000 lb. mooring system constitutes negligence.

36. TBT's lease of the I-2 Mooring as a 2000 lb. mooring, which is was not, to Mr. Heydt constitutes negligence.

37. TBT's failure to undertake even a cursory inspection of the I-2 Mooring system prior to the Vessel mooring, and after notice of the purported "mislabeled" mooring buoy, constitutes negligence.

38. As a direct, proximate and foreseeable result of TBT's negligence, the I-2 Mooring pennant failed, causing substantial damage to the Vessel and causing the Plaintiffs substantial pecuniary and non-pecuniary damages.

## Count III
### Negligent Misrepresentation

39. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

40. At all relevant times, TBT, by and through its agent, Mr. Reinemo, in the course of TBT's business transaction with Mr. Heydt, supplied false and misleading information to Mr. Heydt about, of and concerning, the I-2 Mooring system, *to wit:* Mr. Reinemo specifically supplied to Mr. Heydt guidance and assurance based on his [Mr. Reinemo's] personal knowledge that the I-2 Mooring was (i) a 2000 lb. Mooring system and (ii) suitable to secure the Vessel in Nantucket Harbor.

41. TBT, by and through its agent, Mr. Reinemo, failed to exercise reasonable care or competence in obtaining and communicating information to Mr. Heydt material to the suitability of the I-2 Mooring system to secure the Vessel.

42. The I-2 Mooring as not a 2000 lb. mooring system and was not suitable to secure the Vessel in Nantucket Harbor.

43. Mr. Heydt justifiably relied on TBT's representation that the I-2 Mooring was a 2000 lb. mooring system and suitable to secure the Vessel predicated upon, *inter alia,* that (i) TBT holds itself out to the public, and to Mr. Heydt, as having been in the mooring sales, rental

and service business since 1978, and skilled in the construction of custom moorings; and, given that Mr. Reinemo held himself out to Mr. Heydt as  (ii)  the owner and president of TBT; (iii) a graduate of the U.S. Merchant Marine Academy at Kings Point, New York; (iv) aware of the Vessel from prior rental(s); (v) skilled and qualified to determine the mooring size, weight and strength requirements for a 67 foot yacht, like the Vessel; and, (vi) competent in marine, harbor and mooring operations.

44. But for Mr. Reinemo's negligent misrepresentation the I-2 Mooring was a 2000 lb. mooring system and suitable to secure the Vessel in Nantucket Harbor, Mr. Heydt would not have moored the Vessel to the I-2 Mooring system, and would not have sustained the damages and losses herein stated.

45. As a direct, proximate and foreseeable result of TBT's negligence, the I-2 Mooring pennant failed, causing substantial damage to the Vessel and causing the plaintiffs substantial pecuniary and non-pecuniary damages.

### Count IV

### Breach of Implied Warranties of Fitness for Particular Purpose and Workmanlike Performance

46. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

47. TBT was solely responsible for the design, construction, installation, maintenance, and inspection of the failed I-2 Mooring; and, TBT contracted for lease the I-2 Mooring system to Mr. Heydt for the intended use to secure the Vessel in Nantucket Harbor.

48. TBT conveyed to Mr. Heydt an implied warranty the I-2 Mooring system would perform commensurate with standard marine industry 2000 lb. moorings for its intended use to secure the Vessel.

49. TBT conveyed to Mr. Heydt an implied warranty the I-2 Mooring system was designed, constructed, installed, inspected and maintained commensurate with standard marine industry workmanlike skill and quality and fit for the particular purpose for which Mr. Heydt leased the I-2 Mooring.

50. As part of the transaction to lease the I-2 Mooring, TBT represented, and Mr. Heydt justifiably relied on TBT's representation, that the I-2 Mooring system would secure the Vessel. This representation, affirmation or promise that the I-2 Mooring system would secure the Vessel was made to induce, and did induce, Mr. Heydt to rent the I-2 Mooring, and was intended by the parties to become, and did become, a material basis of the I-2 Mooring rental transaction.

51. In using TBT's I-2 Mooring system, Mr. Heydt relied on the skill, judgment and superior knowledge of TBT, and upon the express and implied warranties of suitability for a particular purpose, which purpose was well known to TBT. As a result, TBT impliedly warranted the I-2 Mooring to be, in all respects, fit and suitable for its intended purpose to secure the Vessel.

52. Relying on TBT's express and implied warranties, Mr. Heydt attempted to use the I-2 Mooring system for its intended purpose but the I-2 Mooring was unsuitable and failed to perform for its normal intended use to secure the Vessel.

53. The I-2 Mooring failed to perform commensurate with standard marine industry fitness for a particular purpose and was not of workmanlike skill and quality, the result of sub-standard workmanship in the design, construction, maintenance and inspection of mooring.

54. TBT breached its implied warranties of fitness for a particular purpose and workmanlike performance by providing an inherently defective mooring system which failed during its intended use while mooring the Vessel in Nantucket Harbor.

55.     TBT breached its implied warranties of workmanlike performance by providing an inherently defective mooring system which failed during its intended use while mooring the Vessel in Nantucket Harbor.

56.     As a direct, proximate and foreseeable result of TBT's breach of its implied warranties, the I-2 Mooring pennant failed, setting the Vessel adrift leeward and causing substantial damage to the Vessel and causing plaintiffs substantial pecuniary and non-pecuniary damages.

## Count V
## Breach of Contract

57.     Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

58.     At all relevant times, TBT and Mr. Heydt had a valid and enforceable contract whereby for valuable consideration TBT would provide to Mr. Heydt a 2000 lb. mooring system to secure the Vessel.

59.     Mr. Heydt performed all of his responsibilities and obligations under the contract terms.

60.     TBT failed to provide to Mr. Heydt a 2000 lb. mooring system to secure the Vessel as agreed under the parties' contract terms.

61.     As a direct, proximate and foreseeable result of TBT's breach of contract, the I-2 Mooring pennant failed, causing substantial damage to the Vessel and causing plaintiffs' substantial pecuniary and non-pecuniary damages.

## Count VI
**Equitable Subrogation**

62. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

63. After the failure of TBT's I-2 Mooring, and resulting substantial Vessel damage, plaintiff Yachtinsure paid certain funds to Mr. Heydt pursuant to a marine insurance indemnification policy providing coverages against losses of the type sustained by the Vessel and Mr. Heydt, the result of TBT's negligence, breach of warranties and contract breach.

64. TBT is not entitled avoid responsibility for its acts and omissions resulting in substantial pecuniary and non-pecuniary losses to Yachtinsure and to Mr. Heydt predicated on Yachtinsure and Mr. Heydt's responsible acts of procuring insurance coverages for the Vessel.

65. Accordingly, TBT has been unjustly enriched, and Yachtinsure and Mr. Heydt have been unjustly impoverished, to the extent of payments made and uncovered losses.

66. In the event the Court were to deny Yachtinsure and Mr. Heydt recovery under equitable subrogation and/or unjust enrichment, then Yachtinsure and Mr. Heydt would be without remedy at law or in equity.

67. To the extent plaintiffs recover on their claims as against TBT, Yachtinsure is entitled to recover from TBT pro rata sums paid by Yachtinsure to Mr. Heydt for damages and losses caused by TBT's negligence, breach of warranties and contract breach, and claims herein stated.

## Count VII
**Negligent Bailment**

68. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

11

69. Mr. Heydt and TBT entered into a consensual transaction whereby Mr. Heydt would, and did, deliver the Vessel to TBT, and TBT would, and did, accept the Vessel, in consideration of $5,418.75 paid, for the intended purpose of TBT securing the Vessel on a 2000 lb. mooring in Nantucket Harbor.

70. At all relevant times, TBT accepted possession, control and responsibility for the Vessel while moored at the I-2 Mooring.

71. By accepting delivery of the Vessel, TBT assumed a duty of care as bailee to protect the Vessel against loss during TBT's custody, and assumed a duty of care to redeliver the Vessel to Mr. Heydt in the same condition as delivered to TBT.

72. At all relevant times, TBT had actual possession and control over the Vessel.

73. Mr. Heydt had no access to the Vessel outside of TBT's normal business hours, and limited access during TBT's business hours by way of TBT's, or others, launch services.

74. TBT, by and through one or more of its agents, breached its duty of care to Mr. Heydt by failing to construct, maintain, inspect, repair and/or replace, the I-2 Mooring resulting in substantial damages to the Vessel.

75. TBT, by and through its owner, Mr. Reinemo, made reckless, false and misleading statements to Mr. Heydt relating to the suitability of the I-2 Mooring to secure the Vessel.

76. TBT failed to redeliver the Vessel to Mr. Heydt in the same condition as delivered to TBT, but with hundreds of thousands of dollars of damage to the Vessel.

77. TBT, as bailee, is liable to Mr. Heydt, as bailor, for damages to the bailed Vessel and the attendant financial losses to the Vessel incurred by Mr. Heydt.

78. As a direct, proximate and foreseeable result of TBT's breach of its duties, responsibilities and obligations under its bailment arrangement, the I-2 Mooring pennant failed, setting the Vessel adrift leeward resulting in substantial damages to the Vessel and causing Plaintiffs pecuniary and non-pecuniary damages.

### Count VIII
### Damages

79. Plaintiffs re-allege, incorporate and adopt by reference each and every allegation contained in this complaint as though fully set forth herein.

80. As a direct, proximate and foreseeable result of TBT's gross negligence, negligence, negligent representation, breach of warranties and contract breach, unjust enrichment and negligent bailment, Mr. Heydt and Yachtinsure have sustained actual damages, plus incidental and consequential losses, loss of use of the Vessel, and attorney fees, costs and expenses, in excess of $400,000. Plaintiffs demand from TBT the foregoing damages in the amount of $400,000, plus exemplary damages and pre and post-judgment interest allowable at law.

### Claim for Relief

WHEREFORE, plaintiffs, Mr. Heydt, Sea Turtle Foundation, and Yachtinsure, pray this honorable Court enter Judgment in favor of plaintiffs, and as against defendant, TBT, by way of Court ORDER:

    a. Awarding Plaintiffs their actual and consequential damages on each of Counts I through VII; and,

    b. Awarding Mr. Heydt exemplary damages on Count I; and,

    c. Awarding Yachtinsure its damages on Count VI; and,

d.  Awarding plaintiffs their reasonable attorney fees, costs and expenses, inclusive of expert witness fees and filing fees, *together with* pre and post-judgment interest, all and in such amounts to the fullest extent allowable at law, and in equity, and for such other and further relief as this Court deems fair and just.

Respectfully Submitted,

PLAINTIFFS/CLAIMANTS

**Mason Heydt, National Save the Sea Turtle Foundation, Inc., and Yachtinsure, Ltd.,**

By their attorney,

s/ James R. Davis
James R. Davis, Esq. # 649750
6 Canonicus Street
Nantucket, MA 02554
843.642.8333 (office)
843.642.8784 (fax)
jim@jdavispc.com
*Attorney for the Plaintiffs*

Dated: October 4, 2018